```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
BRIAN JOHNSON,                                  :      05 Civ. 2357 (SHS)
                                                :
                        Plaintiff,              :      OPINION & ORDER
                                                :
        -against-                               :
                                                :
THE CITY OF NEW YORK, THE NEW YORK              :
CITY POLICE DEPARTMENT, and POLICE              :
OFFICER BRIAN HOLLAND,                          :
                                                :
                        Defendants.             :
------------------------------------------------------------------x
```
SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Brian Johnson has sued defendants the City of New York, the New York City Police Department ("NYPD"), and Police Officer Brian Holland pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights in connection with his February 26, 2002 arrest and subsequent prosecution for narcotics possession. In particular, Johnson asserts that the police employed excessive force in detaining him while executing a search warrant at his girlfriend's apartment; that his subsequent arrest was unconstitutional; and that following that unlawful arrest, he was maliciously prosecuted for both cocaine and marijuana possession. Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that that there no material facts are in dispute and that they are entitled to judgment as a matter of law.

For the reasons that follow, defendants' motion is granted with respect to Johnson's claims of false arrest and malicious prosecution against Officer Holland, and granted in its entirety with respect to his claims against defendants City of New York and

NYPD. However, the motion is denied with respect to Johnson's claim of excessive force against Officer Holland.

I.  Background

Except where noted, the following facts are not disputed by the parties:

On February 26, 2002, several NYPD officers – among them Officer Holland – participated in the execution of a search warrant at Apartment A at 375 Ashford Street in Brooklyn ("375A Ashford"). (Defs.' Local Civil Rule 56.1 Statement ("D. Rule 56.1") ¶ 6.) The warrant, which had been signed by New York State Supreme Court Justice Robert Kreindler, represented that probable cause existed to believe that crack cocaine would be found at that address. (Id. ¶¶ 1-2.) Indeed, upon searching the apartment, police officers uncovered 13 bags of crack cocaine, as well as marijuana. (Id. ¶¶ 8-9.)

The defendant, whose girlfriend resided at the apartment, was also there. (Id. ¶¶ 5, 7.) According to Johnson, upon entering the apartment, police officers dragged him out of his bed at gunpoint, threw him to the ground and pressed on his back, attempting to detain him while the apartment was searched. (Plaintiff's Response to Defendant's 56.1 Statement and Plaintiff's Additional Statement of Material Facts ("P. Rule 56.1") ¶¶ 27-28.) He also alleges that he was "stumped, kicked, and stood on," and that an officer stepped on his head. (Id. ¶¶ 29-30.). At some point, Johnson told Officer Holland that the marijuana belonged to him. (Dep. of Brian Johnson dated October 7, 2005 ("Johnson Dep."), attached as Exhibit E to the Declaration of Sheryl Bruzzese dated Nov. 4, 2005 ("Bruzzese Decl.") at 35.) According to Johnson, after the contraband was discovered, he was taken outside in his underwear and a shirt and placed in a police van, where he was given a pair of pants to put on. (P. Rule 56.1 ¶¶ 37, 39.) He was placed under arrest

and handcuffed. (Id. ¶ 40.) Johnson claims that the handcuffs were fastened extremely tightly around his wrists, but acknowledges that a police officer relaxed the grip after he complained. (D. Rule 56.1 ¶ 10; Johnson Dep. at 63.)

Johnson asserts that these events caused him psychological injury (P. Rule 56.1 ¶ 42) and that, although he did not suffer any sustained physical injuries, he "received a red mark where he was handcuffed" and that "h]is wrist was worn out a little bit." (Id. at ¶ 11). Johnson also claims that his back was bruised as a result of the officers' having stepped on him (Johnson Dep. at 37-38), although he admits he neither saw any bruising nor reported it to a doctor. (Id. at 39-40.) Finally, Johnson testified that $1,418.00 was removed from his pants and vouchered by Office Holland and that, despite obtaining a release for the money from the Brooklyn District Attorney's Office, he has been stymied by the NYPD in his attempts to recover it. (Id. at 48-49, 58-60; P. Rule 56.1 ¶¶ 33-36)

In March 2002, a grand jury returned a true bill indicting Johnson on five counts: criminal possession of a controlled substance (cocaine) in the third, fifth, and seventh degrees; criminal use of drug paraphernalia in the second degree; and unlawful possession of marijuana. (D. Rule 56.1 ¶ 16.) During the course of his criminal prosecution, Johnson moved to controvert the search warrant; that motion was denied by New York State Supreme Court Justice Patricia DiMango. (Id. ¶ 18-21.) Justice DiMango found that given Justice Kreindler's personal interview of a confidential informant who said he purchased drugs out of 375A Ashford Street, the warrant was appropriately issued. (People v. Johnson, No. 1275/2002, Order dated Dec. 20, 2002, attached as Exh. C to the Bruzzese Decl.). However, Johnson successfully moved to suppress his statements to police that the marijuana at the apartment was his. (People v.

Johnson, No. 1275/2002, Tr. dated Oct. 16, 2002 ("Oct. 16. Tr.") at 33-34). After a jury trial in October 2002, Johnson was acquitted on all counts. He then brought the present suit, alleging that (i) he was falsely detained and arrested; (ii) police officers used excessive force in detaining and arresting him; (iii) he was maliciously prosecuted; and (iv) his due process rights were violated by the NYPD's refusal to return the money vouchered during the search.

## II. DISCUSSION

### A. *The Summary Judgment Standard*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Allen v. Coughlin, 64 F. 3d 77, 79 (2d Cir. 1995). In ruling on the motion, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." American Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994) (quoting Consarc Corp. v. Marine Midland Bank, N.A., 996 F.2d 568, 572 (2d Cir. 1993)) (internal quotation marks omitted). However, the party opposing summary judgment "may not rely on mere conclusory allegations or speculation, but instead must offer some hard evidence" in support of his factual assertions opposing summary judgment. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998); see Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996).

### B. *False Arrest*

Under both New York and federal law, a plaintiff claiming false arrest must demonstrate that he was intentionally confined without his consent and without justification. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1995); Broughton v. State,

4

37 N.Y.2d 451, 456 (N.Y. 1975). If probable cause to arrest existed, a false arrest claim will fail. See Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir. 2001); Broughton, 37 N.Y.2d at 456. Similarly, a false arrest claim fails if the underlying detention occurred during a search pursuant to a warrant predicated on probable cause. See Michigan v. Summers, 452 U.S. 692, 705, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981). Based on these standards, both the initial detention and the eventual arrest of Johnson were proper.

Johnson's initial detention was proper because it occurred during the search of his girlfriend's premises, where he was staying, and because that search was performed pursuant to a valid warrant issued by a neutral judge. Summers, 452 U.S. at 705. Johnson's only argument to the contrary is one that he raised and lost before the state court, viz., that the warrant itself was improperly issued (and therefore presumably that the detention was the fruit of an unlawful search). However, Johnson has not made a sufficient showing to overcome the substantial deference accorded to the issuing judge's finding of probable cause. United States v. Ventresca, 380 U.S. 102, 106, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1985). There is no suggestion that the warrant affiant deliberately misled Justice Kreindler or that the judge abandoned his function as a neutral arbiter of probable cause. See United States v. Leon, 468 U.S. 897, 914, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). Instead, Johnson simply contends that there was insufficient evidence to support Justice Kreindler's probable cause finding because his questioning of the confidential informant did not establish probable cause to find that criminal activity was occurring at 375A Ashmont Street. Specifically, Johnson asserts that because the judge only asked the informant what he did "in connection with the building," there was

5

insufficient reason to believe that drugs were being sold from apartment 375A in particular.

The Court disagrees. As Justice DiMango noted in denying Johnson's motion to controvert the warrant at the state court level, the confidential informant specifically told Justice Kreindler that he had personally purchased crack from the first floor apartment at 375 Ashmont Street and that 375A is the only apartment on the first floor of 375 Ashmont Street. (Search Warrant Hearing before Hon. Robert Kreindler, Supreme Court of the State of New York, Kings County, Tr. dated Feb. 21, 2002, at 3-5) This, combined with the fact that the purchase was performed pursuant to police surveillance, provided Justice Kreindler with ample evidence to conclude that probable cause existed to search that specific apartment, and plaintiff has presented no further evidence to call that finding into question. See United States v. Wagner, 989 F. 2d 69, 73 (2d Cir. 1993) ("An informant's participation in supervised drug purchases is powerful corroborative evidence for purposes of determining probable cause."). Johnson's initial detention, which occurred during the execution of this warrant, was therefore proper. Summers, 452 U.S. at 705.

Moreover, Johnson's eventual arrest was proper because, according to his own deposition testimony, he told police officers that any "weed" they found on his pants was his. (Johnson Dep., at 30; Oct. 16 Tr. at 30). Whether or not there was probable cause to believe that the cocaine found in the apartment was his (a point heavily contested by plaintiff) is irrelevant because Johnson's admission of marijuana possession was sufficient on its own to merit his arrest. Accordingly, because both Johnson's initial detention and his eventual arrest were supported by probable cause, Provost, 262 F.3d at 157, defendants are entitled to judgment as a matter of law as to Johnson's false arrest claim.

6

### C. Malicious Prosecution

Johnson does not respond to defendants' motion insofar as it relates to his claim for malicious prosecution, an omission that on its own would be sufficient for this Court to rule against him. See Lipton v. County of Orange, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (noting, in summary judgment context, that a court can rule in favor of moving party if respondent fails to respond to that party's arguments favoring dismissal of particular claims). This claim also fails on the merits.

To sustain a section 1983 claim for malicious prosecution, Johnson must proffer evidence demonstrating "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding;" and (4) actual malice. Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). Importantly, the first element – the commencement of a criminal proceeding – requires that a plaintiff present some evidence that the defendant police officer was involved in the prosecution subsequent to the arrest and initial charge. See Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999); Mejia v. City of New York, 119 F. Supp. 2d 232, 272 n.37 (E.D.N.Y. 2000). Here, Johnson has not offered any evidence of Officer Holland's involvement in the decision to prosecute him after the arrest. Similarly, Johnson has not proffered any evidence of malice by Officer Holland. Therefore, because there are no facts on the record which would support these elements of malicious prosecution, defendants are entitled to judgment on this claim as a matter of law. See Golub v. City of New York, 334 F. Supp. 2d 399, 407 (S.D.N.Y. 2004) (police officers granted summary judgment where there was no evidence of their involvement in the prosecution after the original arrest and charge).

D. *Excessive Force*[1]

Claims for excessive force meted out during the course of an arrest or a search are analyzed under the Fourth Amendment's "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). Using this standard, police behavior is unconstitutional if it is objectively unreasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397. The more precarious a particular situation, the more substantial the force that can be used. See Muehler v. Mena, 544 U.S. 93, 100, 125 S. Ct. 1465, 161 L. Ed. 2d 299 (2005); cf. id. at 108 (Stevens, J., concurring in the judgment) ("When officers undertake a dangerous assignment to execute a warrant to search property . . . presumably occupied by violence-prone gang members, it may well be appropriate to use both overwhelming force and surprise . . . .").

Employing this standard, Johnson's excessive force claim cannot be disposed of at this stage because it is the topic of some factual dispute which, if resolved in his favor, could lead a reasonable jury to find that his Fourth Amendment rights were violated. Johnson stated at his deposition that he was thrown off the bed, stepped on, stomped, and kicked. In response, the City correctly points out that an officer's holding an individual to the ground with his foot during a potentially dangerous narcotics search is likely "objectively reasonable." Cf. Zirlin v. Village of Scarsdale, 365 F. Supp. 2d 477, 486-87 (S.D.N.Y. 2005) (detaining individual on ground and in handcuffs during search was reasonable). But Johnson alleges more than this, specifically, that he was actually "st[o]mped on" and

---

[1] Johnson's complaint styles his excessive force claim as a state law claim of assault and battery, not as a federal Fourth Amendment claim. (Complaint at ¶¶ 43-39). His moving papers, however, clarify that this classification was erroneous and that "all of Johnson's claims are brought pursuant to federal law." (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment dated Dec. 9, 2005, at 8.)

8

"kicked" by officers. While "'not every push or shove' . . . violates the Fourth Amendment," Graham, 490 U.S. at 397 (quoting Johnson v. Glick, 481 F. 2d 1028, 1033 (2d Cir. 1973)), there surely would be no objective need to "stomp" and "kick" an individual already under police control. Such gratuitous force – if true – would be actionable under the case law. See Maxwell v. City of New York, 380 F.3d 106, 108-09 (2d Cir. 2004) (where plaintiff alleged – and officer denied – that officer "violently and unnecessarily swung and jerked her" and "shoved her head first into his police car, causing her head to strike [a] metal partition," district court was wrong to grant summary judgment on excessive force claim); Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987) (where plaintiff had testified that Officer pushed her against a car door, "yanked" her out, "threw" her up against the fender and twisted her arm back, causing bruises that lasted a couple weeks, district court incorrectly granted summary judgment).[2]

Similarly, on the facts alleged, Officer Holland is not entitled to qualified immunity as to Johnson's excessive force claim. Qualified immunity attaches where (i) a constitutional right would have been violated on the facts alleged; but (ii) it would have been objectively reasonable for the defendant to have believed that his actions did not violate clearly established law. Saucier v. Katz, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272. Johnson has a constitutional right to be free from a police officer's use of excessive force, and it could not be objectively reasonable for Officer Holland to have believed that the use of gratuitous force beyond what is necessary to subdue an individual during a search is allowed under the law. Cf. Smith v. Fields, 95 Civ. 8374, 2002 U.S. Dist. LEXIS 3529, at *22 n.9 (S.D.N.Y. Mar. 1, 2002) (allegation that plaintiff was "slapped and kicked about the

---

[2] Despite the City's assertions to the contrary, even if Johnson suffered no sustained injuries from the officers' alleged attack, he would still have an excessive force claim. Robison and Maxwell make clear that temporary bruising or pain from unnecessary police action is sufficient to state a claim for excessive force. See Robison, 821 F.3d at 924; Maxwell, 380 F.3d at 109.

9

face" sufficient to defeat claim of qualified immunity at summary judgment stage); Nogue v. City of New York, No. 98 Civ. 3058, 1999 U.S. Dist. LEXIS 13201, at *31 (E.D.N.Y. Aug. 27, 1999) (where plaintiff alleged that officer kicked and punched him while he was on the ground, question of qualified immunity was for a jury).

>  *D. The Specific Defendants*
>
>> *i. Officer Holland.*  Defendants assert that summary judgment must be granted as to Officer Holland because there is no evidence – or even suggestion – that he was the individual who used excessive force. However, excessive force claims can be brought both against the perpetrating officer and against officers who are "present during the assault, yet fail[] to intercede on behalf of the victim even though [they] had a reasonable opportunity to do so." Jeffreys v. Rossi, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997); Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)).

Here, though it is conceded that Officer Holland entered the premises shortly after the first set of officers, there is a material dispute regarding Officer Holland's proximity to the alleged assault on Johnson. Johnson cites Officer Holland's testimony in front of the grand jury in the underlying criminal matter indicating that at the moment the other officers broke down the door and entered the bedroom, he could see inside the apartment. (People v. Johnson, No. 1275/02, Tr. dated Mar. 5, 2002 at 6-8, attached as Exh. 1 to Fink Declaration). If Officer Holland did have a line of vision to the alleged attack – an issue of fact that the City does not address – or if he was in fact inside by the time the alleged force was exacted, he could be liable for his fellow officers' actions. See Jeffreys, 272 F. Supp. 2d at 475 (since defendant officers "were either located inside [the classroom where the wrongful force was used] or in the doorway or hallway outside of

the classroom," plaintiff survived summary judgment motion); cf. Fischl v. Armitage, 128 F.3d 50, 57 (2d Cir. 1997) (inmate's excessive force claim against corrections officer should not have been disposed of at summary judgment stage where reasonable juror could conclude from the record that officer was "in the vicinity" of an attack but did not step in despite inmate's audible protestations). As such, ruling as a matter of law is inappropriate at this stage.

*ii. The City of New York and the NYPD.* While the Eleventh Amendment does not bar suits against municipalities and their agencies, such entities cannot be sued simply on a theory of respondeat superior. Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 400, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997); Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004). Instead, municipalities or their agencies can only be liable for a plaintiff's injuries if those injuries resulted from policy or practice endemic to the agency, i.e., from an official directive or even an unspoken custom of acquiescence by agency officials. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Hayes v. O'Connor, No. 03 Civ. 1371, 2004 U.S. Dist. LEXIS 20640, at *16-17 (S.D.N.Y. Oct. 12, 2004).

Johnson has not suggested that any evidence exists linking the alleged attack on himself to a more widespread City policy. In fact, Johnson has not responded to the City's motion for summary judgment on this point. Instead, his complaint simply asserts that the City has "failed to take steps necessary to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual defendants in this and in similar cases" and that this supervisory failure has damaged him. (Complaint ¶¶ 31-32.) Without citing facts to support his allegation of a City policy – such as instances of supervisory

11

failures other than that involving Officer Holland – Johnson cannot survive the City's motion for summary judgment. See Jeanty v. County of Orange, 379 F. Supp. 2d 533, 545 (S.D.N.Y. 2005) ("Conclusory allegations of a municipality's pattern or policy of unconstitutional behavior are insufficient to establish a Monell claim, absent evidence to support such an allegation." (quoting McAllister v. New York City Police Dep't, 49 F. Supp. 2d 688, 705 (S.D.N.Y. 1999)) (internal quotation marks omitted)); Hayes, 2004 U.S. Dist. LEXIS 20640, at *16-17 (same). Therefore, the City of New York is entitled to summary judgment.

This same analysis applies to defendant NYPD, even were that agency a suable entity in the first place, which it is not, see N.Y. City Charter, Ch. 17 § 396, Neishlos v. City of New York, 00 Civ. 914, 2003 U.S. Dist. LEXIS 19554, at *1 fn.1 (S.D.N.Y. Oct. 31, 2003). Thus, the NYPD is also entitled to summary judgment in its favor.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to Johnson's claims of false arrest and malicious prosecution. The motion is also granted in its entirety as to defendants City of New York and New York City Police Department. However, the motion is denied insofar as it relates to Johnson's claim of excessive force against Officer Holland.

Dated: New York, New York
August 14, 2006

SO ORDERED:

Sidney H. Stein, U.S.D.J.